**In re FRACMASTER, LTD.,
Foreign Debtor.**

Bankruptcy No. 99–61292.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Aug. 10, 1999.

Jarrel D. McDaniel, Samuel M. Stricklin, Sheinfeld, Maley & Kay, P.C., Dallas TX, for Petitioner.

J. Bennett White, Wilson, Sheehy, Knowles, Robertson & Cornelius, Tyler, TX, for Respondents.

Matthew S. Okin, Vinson & Elkins, LLP, Houston, TX, J. Patrick Kelley, Ireland, Carroll & Kelley, PC, Tyler, TX, for Intervenor.

Michael J. McNally, McNally & Patrick, LLP, Tyler TX, for Debtor.

### MEMORANDUM OF DECISION REGARDING TRIAL OF CONTESTED PETITION FOR A CASE ANCILLARY TO A FOREIGN PROCEEDING AND RESPONDENTS' MOTION TO DISMISS PURSUANT TO BANKRUPTCY RULE 1011(b)

BILL G. PARKER, Bankruptcy Judge.

This matter is before the Court upon trial of a contested petition commencing a case ancillary to a foreign proceeding under 11 U.S.C. § 304 and the hearing of a motion to dismiss such petition. The § 304 Petition (the "§ 304 Petition") was filed by Arthur Andersen, Inc. ("Petitioner" or "AAI") as Receiver and Trustee of Fracmaster, Ltd. ("Fracmaster"). The § 304 Petition was timely controverted by certain United States citizens, Two–Dawa-

co, Inc., Frac Partners, Ltd., Ray C. Davis, and Kelcy L. Warren (the "Respondents"), who hold a judgment against Fracmaster arising from litigation conducted in Gregg County, Texas. Additionally, the Respondents filed a "Motion to Dismiss Pursuant to Bankruptcy Rule 1011(b)" on July 14, 1999, the consideration of which was postponed by the Court until the time of the trial of the contested petition. Based upon the Court's consideration of the pleadings, the evidence admitted at the hearing, including the stipulations of the parties and taking judicial notice of the record from a previous hearing in a related proceeding conducted on July 15, 1999, and the argument of counsel, the Court makes the following findings of fact and conclusions of law[1] pursuant to Fed.R.Civ.P. 52, as incorporated into proceedings relating to a contested petition commencing a case ancillary to a foreign proceeding by Fed. R. Bankr.P. 7052 and 1018.

## I. JURISDICTION.

This Court has jurisdiction to hear and to determine the merits of the § 304 Petition and the corresponding Motion to Dismiss pursuant to 28 U.S.C. § 1334 and 28

U.S.C. § 157(a).[2] The Court has the authority to enter a final order regarding this contested petition because it constitutes a core proceeding arising under Chapter 11 pursuant to 28 U.S.C. § 157(b)(1).

## II. FINDINGS OF FACT.

The facts are not in substantial dispute. Fracmaster, Ltd. is a corporation created under the laws of Canada which, prior to, and at the commencement of the Canadian judicial proceedings described below, as well as the commencement of this case, maintained its principal place of business in Calgary, Alberta, Canada. Fracmaster has been continuously subject to Canadian judicial proceedings since March 19, 1999, at which time the Court of Queen's Bench in Alberta, Canada (the "Canadian Court") granted the petition of Fracmaster and its subsidiaries under the Companies' Creditors Arrangement Act of Canada[3] (the "CCAA Proceeding"). Such action triggered a stay of proceedings against Fracmaster and authorized the commencement of proceedings to carry out a restructure of Fracmaster by way of a plan of compromise or arrangement with its creditors

---

1. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

2. The Court rejects the Respondents' contention that, if AAI fails to qualify as a "foreign representative," then the jurisdiction of this Court has not been invoked. If this Court's jurisdiction were not invoked, then it could not *decide* whether or not AAI qualifies as a "foreign representative" or whether the Canadian proceedings constitute a "foreign proceeding." Indeed, it would not possess the requisite power to grant the Respondents' motion to dismiss the § 304 Petition. Whether or not the Petitioning Representative fulfills the prerequisites for granting a § 304 petition has nothing to do with the existence of this Court's jurisdiction. As the Supreme Court has stated, [i]t is firmly established in our cases that the absence of a valid (as

opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case. *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998), citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)["[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."] and citing generally 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1350, p. 196, n. 8 (2d ed.1990).

3. The CCAA is a Canadian federal statute which provides a statutory system, roughly equivalent to the Chapter 11 process in the United States, whereby corporations which are insolvent may seek court protection from creditor actions as they attempt to restructure their financial affairs, usually by way of a plan of arrangement or compromise with creditors.

(the "CCAA Order"). Fracmaster's action was supported by its primary secured lenders consisting of the Royal Bank of Canada, Canadian Imperial Bank of Commerce, Bank of Nova Scotia, Hong Kong Bank of Canada, Banque Nationale de Paris (Canada) and Credit Suisse First Boston Canada (the "Lending Syndicate"), as was the appointment of AAI as Monitor under the CCAA Order. As the title suggests, AAI was charged with the duty of monitoring the business and affairs of Fracmaster for the Canadian Court during the pendency of the CCAA Proceeding.

On May 14, 1999, the Canadian Court convened a hearing in the CCAA Proceeding to consider the sale of substantially all of the assets of Fracmaster to a company called UTI Energy Corporation ("UTI"). The Lending Syndicate supported the sale to UTI, but, as an alternative measure in the event that the sale to UTI was not approved, filed a motion to lift the stay and to appoint a receiver for Fracmaster. The Canadian Court took the matter under advisement and, on May 17, 1999, denied the sale of Fracmaster to UTI and appointed AAI as receiver for Fracmaster. In explaining its ruling through the issuance of written "Reasons for Decision," the Canadian Court noted that, while the UTI proposal could theoretically be considered within the context of the CCAA Proceeding, "the spirit of the CCAA contemplates a restructuring, or at least an attempt at restructuring, for the general benefit of all stakeholders." (Ex. 2, ¶ 36). Thus, the Canadian Court concluded as follows:

[T]he proposed transaction does not create a pool of cash in which unsecured creditors or shareholders can ultimately participate for their general benefit. It does not provide for the opportunity to consult with those stakeholders because it does not contemplate their receipt of any benefit. The court does not have the comfort of an independent opinion as to the fairness of the transaction or the process leading up to it. It has only a limited opportunity to evaluate the proposal. However reasonable the proposal may be, its purpose is to facilitate a sale for the benefit of the [Lending] Syndicate. That can be accomplished in a different fashion without distorting the spirit of the CCAA. These concerns, cumulatively, lead me to no other conclusion that this proposed sale ought not to be approved under the CCAA. (Ex. 2, ¶ 40).

The Canadian Court appointed AAI as the receiver-manager for Fracmaster under the provisions of the Judicature Act of Alberta (the "Judicature Act"). While the Judicature Act is, as the name suggests, a provincial statute of Alberta as opposed to a federal insolvency statute, it is often a preferred means of liquidating the assets of a bankrupt company for distribution since a receiver has the ability to vest assets free and clear of liens to a successful purchaser of such assets. Further, an appointed receiver under the Judicature Act owes a duty to protect the interests of all creditors in its administration, not just the interests of secured lenders. Finally, there is a greater degree of direct court control over the liquidation process than is usually associated with a bankruptcy case filed under the Bankruptcy and Insolvency Act and any interested party has standing to seek from the issuing court any order directing the actions of the appointed receiver or otherwise affecting the receivership process. As the appointed Receiver–Manager for Fracmaster, AAI was directly charged with the duty "to preserve and protect the undertaking, property and assets of Fracmaster *for the benefit of all claimants*, including the secured creditors." (Ex. 2, ¶ 46)(emphasis added). The Canadian Court also directed AAI to submit an immediate report containing recommendations as to the best methodology to sell or otherwise deal with all of Fracmaster's assets, again "for the benefit of all claimants, including the secured creditors." (Ex. 2, ¶ 45).

The Canadian Court entered a formal order on May 18, 1999 creating the receiv-

ership of Fracmaster (the "Canadian Receivership"). Such order granted to AAI, as the receiver, pervasive control over all property of Fracmaster and provided for the liquidation of such property outside of the ordinary course of business, subject to the terms of sales being approved by further court order. It further gave AAI the right to "enter into arrangements or settle, extend or compromise any indebtedness by or to [Fracmaster]" (Ex. 3, ¶ 10e) and

> "to pay out of the monies coming into its hands such debts of [Fracmaster] that have priority over the claims of secured creditors of [Fracmaster] and any such debts as in its judgment may be required to be paid in order to properly maintain or carry on the business and undertaking of [Fracmaster] and to compromise any claims or debts of [Fracmaster] as may be desirable." (Ex. 3, ¶ 16)

On the same day, the Canadian Court entered an order establishing expedited bid procedures for the sale of all or substantially all of the assets of Fracmaster.

Following the re-solicitation of bids for purchase of the Fracmaster assets, the Canadian Court convened a hearing on May 21, 1999 to consider the submitted bids and subsequently entered an order approving the bid of B.J. Services for $80 million (Canadian).[4] It did so upon the recommendation of AAI as Receiver, despite the fact that the Lending Syndicate was still supporting the UTI bid which was approximately 33% lower. A subsequent appeal to the Alberta Court of Appeal by certain unsuccessful bidders seeking to overturn the order approving the sale to B.J. Services was unsuccessful. Thereafter, the Canadian Court on June 28, 1999 entered an order vesting title to substantially all of the assets of Fracmaster in

B.J. Services. The closing of the sale to B.J. Services occurred in Canada and, upon receipt of the $80 million (Canadian) in sale proceeds from B.J. Services, AAI deposited the funds in Canadian financial institutions.

Meanwhile, in order to forestall the efforts of the Respondents who had filed an Emergency Application for Turnover after Judgment, Appointment of Receiver and Appointment of Master in Chancery before the 124th Judicial District Court of Gregg County, Texas, AAI, in its capacity as Receiver, filed the § 304 Petition in this Court on June 18, 1999. Copies of the § 304 Petition and the accompanying summons were timely served upon the Respondents.

Immediately prior to the inception of a hearing before this Court to determine cross-requests for preliminary injunctive relief filed by AAI and the Respondents in this proceeding, the Respondents filed a petition in this Court on July 2, 1999 under 11 U.S.C. § 303 (the § 303 Petition) instituting an involuntary Chapter 7 bankruptcy case against Fracmaster. Pursuant to the procedures prescribed in the Federal Rules of Bankruptcy Procedure, the § 303 Petition is not yet ripe for adjudication; however, unlike the § 304 Petition, the filing of the § 303 Petition invoked the automatic stay under 11 U.S.C. § 362(a).

Notwithstanding the invocation of the automatic stay, the Lending Syndicate sought from the Canadian Court and on July 6, 1999, the Canadian Court entered, an order adjudging Fracmaster a bankrupt under the Canadian Bankruptcy and Insolvency Act[5] (the "Canadian Bankruptcy"). AAI was named as Trustee of Fracmaster. On July 13, 1999, prior to the date the Respondents filed a responsive pleading to

---

4. This is roughly the equivalent of $54–55 million (U.S.).

5. The Bankruptcy and Insolvency Act is the primary federal statute which deals with insolvency issues under Canadian law. It provides a system under which the creditors of a bankrupt can pursue their claims by collective action through a trustee, so that the bankrupt's assets can be administered and distributed on an equitable basis, subject to the priorities of the preferred creditors and the rights of secured creditors.

the § 304 Petition, AAI amended its status as the petitioner in this ancillary proceeding to reference its capacity as the Trustee of Fracmaster as a result of the inception of the Canadian Bankruptcy.

## III. CONCLUSIONS OF LAW.

### A. Framework for Decision.

■ 11 U.S.C. § 304(a) states that "[A] case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative." Fed. R. Bankr.P. 1011(a) provides that any party in interest to a petition commencing a case ancillary to a foreign proceeding may contest the granting of that petition. While many reported decisions offer a cryptic and tortuous analysis of § 304 issues by commingling the issues pertaining to the granting of a petition under § 304(a) with those more properly related to whether injunctive or other relief should ultimately be granted under § 304(b), the determination of whether a § 304 petition should be granted involves a rather straightforward process of determining: (1) whether a "foreign proceeding" exists, as defined by § 101(23) of the Bankruptcy Code; and (2) whether the party filing the § 304 petition is a "foreign representative" under § 101(24). If both of these prerequisites are met, a bankruptcy court has little, if any, discretion under the Bankruptcy Code to dismiss a § 304 petition. *In re Taylor*, 176 B.R. 903, 909–10 (Bankr.C.D.Cal. 1995)[A trial of a § 304 petition should not be a "mini-trial" of the § 304(b) issues and, though a court has considerable discretion to determine extent of relief under § 304(b) or to abstain under § 305, the statutory framework does not contemplate judicial discretion under § 304(a) alone.] The parties in this case have agreed that, if this Court determines that a foreign proceeding exists, then AAI meets the definition of a foreign representative.[6] Therefore, the Court need only resolve

whether a foreign proceeding does in fact exist.

### B. Existence of a Foreign Proceeding.

■ § 101(23) of the Bankruptcy Code defines a "foreign proceeding" as a

... proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

The breadth of the definition of "foreign proceeding" insures that issues arising from a wide range of foreign insolvency-related actions can be addressed under the auspices of § 304. Its scope encompasses administrative as well as judicial proceedings, and a proceeding need not even have been brought under the foreign country's bankruptcy laws in order to qualify. This inclusive approach is consistent with the "perceived Congressional objective under section 304 of exercising 'the maximum flexibility possible in handling ancillary cases in light of principles of international comity and respect for the laws and judgements of other nations.'" 3 COLLIER ON BANKRUPTCY ¶ 304.02[3] at p. 304–10 (15th ed. rev.1999), quoting *In re Brierley*, 145 B.R. 151, 160 (Bankr.S.D.N.Y.1992).

In this case the parties have stipulated that Fracmaster has been continuously subject to Canadian judicial proceedings since March 19, 1999, when the CCAA Proceeding was commenced. Closing arguments notwithstanding, one must conclude that these judicial proceedings are, in fact, pending in a foreign country, and there is no dispute that Fracmaster's principal place of business and its principal

---

**6.** 11 U.S.C. § 101(24) defines a "foreign representative" as a "...duly selected trustee, administrator, or other representative in a foreign proceeding."

assets were located in Canada when this case commenced. However, notwithstanding the fact that there are technically three distinct judicial proceedings now pending in Canada[7], the Respondents state that this Court must base its determination solely upon an assessment of the proceeding which was active at the time that the § 304 petition was filed—the Canadian Receivership—and assert that the Canadian Receivership is not the type of proceeding which Congress intended to be recognized as a "foreign proceeding" for the purposes of § 304.

■ First, the Respondents claim that the legislative history pertaining to § 304 indicates a congressional intent to limit the scope of § 101(23) to those proceedings brought under foreign bankruptcy laws. They cite this Court to the Senate Judiciary Committee notes pertaining to § 304 which state, in part, that:

> [T]his section [304] governs cases filed in the bankruptcy courts that are ancillary to foreign proceedings. That is, where *a foreign bankruptcy case* is pending concerning a certain debtor and that debtor has assets in this country, the foreign representative may file a petition under this section....S. Rep. No. 95–989 at 35 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5821. (emphasis added).

However, the inference which the Respondents seek to draw from this reference is clearly refuted by the literal language utilized by Congress in § 101(23) which clearly allows a proceeding to qualify as a foreign proceeding regardless of "...whether or not [it is brought] under bankruptcy law...." The statutory text actually adopted by Congress is a much more reliable barometer of its intent regarding the scope of a qualifying foreign proceeding and such text should not be overridden by some largely descriptive general statement contained in committee notes. *See Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)[asserting that "only the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation of the 'plain meaning' of the statutory language"].

Thus, a foreign action need not invoke foreign bankruptcy laws in order to qualify as a foreign proceeding under § 101(23). However, such a proceeding does not qualify unless it exists "...for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." The Respondents claim that the Canadian Receivership does not meet that standard because there is no intent to adjust debts in that case and, therefore, it is more properly characterized as an action in the nature of a private remedy, and opposed to an action in the nature of a bankruptcy case.

■ Again, however, the literal language of § 101(23) as quoted above dictates the degree to which the nature of a foreign proceeding must correspond to those processes usually associated with a bankruptcy case. It is a disjunctive list, so a foreign action qualifies as a "foreign proceeding" so long as it seeks one of the purposes enumerated in § 101(23): (1) liquidating an estate; (2) adjusting debts by composition, extension, or discharge, or (3) effecting a reorganization.

**7.** They are: the CCAA Proceeding, the Canadian Receivership, and the Canadian Bankruptcy. AAI asserts that each of the three actions constitute a foreign proceeding under § 101(23). The Respondents contend that the CCAA Proceeding does not meet the definition because it has been effectively superseded by the initiation of the Canadian Receivership. Nor can the Canadian Bankruptcy be considered as a foreign proceeding, say the Respondents, because it did not exist as of the time that the § 304 petition was filed. While it is interesting to ponder the issue of whether the quiescence of the CCAA Proceeding or the post-petition initiation of the Canadian Bankruptcy necessarily compels the expulsion of those respective actions from the scope of § 101(23), the Court need not address such issues because of its ruling regarding the characterization of the Canadian Receivership.

Clearly the Canadian Receivership seeks one or more of those enumerated purposes. The Canadian Court has specifically charged AAI, as the appointed Receiver–Manager, with the duty to liquidate the assets of Fracmaster. It is further charged with the duty of acting in the best interests of all creditors. The uncontradicted testimony further reveals that receivers appointed under Judicature Act can, and often do, engage in claims administration if there is a necessity for such. Thus, it is clear that the Canadian Receivership exists for the purpose of liquidating the estate of Fracmaster and that, in fact, such has been accomplished by AAI in that proceeding under the direct supervision of the Canadian Court. The Receivership might also further encompass the adjustment of debts, if sufficient assets are realized such as would justify the need for any claims administration. However, the fact that the proceeds realized from the sale of the Fracmaster assets may be insufficient to create a distribution to unsecured creditors does not render that intended process illusory or illegitimate.

Finally, the Respondents assert that the Canadian Receivership should not be recognized as a foreign proceeding because, in their opinion, the Canadian Court's efforts to liquidate the assets of Fracmaster under the auspices of the Judicature Act of Alberta is unconstitutional under Canadian law. It is undisputed that the Canadian Receivership was authorized and is being conducted under provincial receivership statutes of Alberta. Nor is it disputed that, under the Canadian constitutional system, issues of bankruptcy and insolvency are delegated to federal control, while all authority to govern the disposition of property and civil rights are reserved to the provinces. Thus, the Respondents allege that the utilization of a provincial statute by the Canadian Court to accomplish a purpose generally associated with insolvency proceedings is improper and that this Court should refuse to recognize the legitimacy of a proceeding based upon such an alleged usurpation of power by the Canadian Court.

■ The Respondents' position is ill-founded in a number of respects. First of all, there is no requirement under § 101(23) that the foreign proceeding be based solely on the application of national or federal law in the foreign country. The fact that the Receivership is statutorily grounded in the Judicature Act of Alberta, as opposed to a federal bankruptcy statute, is of no consequence in the determining the legitimacy of the § 304 petition. More importantly, there is simply no foundation to the Respondents' assertion that the Canadian Court is acting in an illegitimate manner. The uncontradicted testimony demonstrates that the sequential development of judicial events involving Fracmaster would not be deemed unusual in the course of Canadian insolvency proceedings. This is confirmed by the fact that it was the Canadian Court which took the initiative to reject the Lending Syndicate's request to confirm the sale to UTI under the CCCA, and to insist that the sale of Fracmaster's assets be conducted under the auspices of the Receivership. Obviously such initiative demonstrates that the Canadian Court believes that it is acting within legitimate constitutional constraints. Further, none of the unsuccessful bidders who were seeking to overturn on appeal the Canadian Court's ruling accepting the BJ Services' bid raised any constitutional defect with regard to the appointment of the Receiver, nor did the Court of Appeal of Alberta feel constrained to address any such concerns on its own volition. This Court must also note that the Respondents could have elected to participate in the Canadian proceedings and could have raised this precise constitutional issue before the Canadian courts which are obviously more qualified than this Court to adjudge the constitutionality of any action under Canadian law. However, they have chosen not to do so.

■ While this Court may eventually be called upon to evaluate the fairness of the

Canadian process as it ponders the type of relief, if any, to be granted under § 304(b), this Court is of the firm belief that Congress in its enactment of § 304 did not intend for American bankruptcy courts to adjudicate the constitutional legitimacy of a proceeding under foreign law in order to determine whether or not a foreign proceeding exists under ours. Such a supposition not only defies common sense, it contravenes the general purpose of comity and universality which undergirds the very existence of § 304. The recognition of the Canadian Court's jurisdiction to utilize the provincial receivership process in the manner in which it has, by not only the Canadian courts and the winning litigants, but also by the unsuccessful litigants, sufficiently demonstrates to this Court that the Canadian Court was acting well within its scope of judicial power to authorize and to supervise a liquidation of Fracmaster's assets under the auspices of the Canadian Receivership.

Thus, on the basis of the foregoing analysis, this Court concludes that the Canadian Receivership constitutes a "foreign proceeding" for the purposes of § 304(a). Therefore, as mentioned previously, it is undisputed that AAI constitutes a "foreign representative." Thus, § 304 petition should be granted, absent a finding by this Court that any request for relief under § 304 has been rendered moot by the Respondents' filing of an involuntary petition against Fracmaster.

### C. *Respondents' Motion to Dismiss § 304 Petition as Moot.*

In their initial response to the filing of the § 304 petition, the Respondents filed a motion to dismiss the petition on the grounds that the subsequent filing by the Respondents of an involuntary petition against Fracmaster effectively mooted all of the relief which could be sought by AAI in the § 304 proceeding. They assert that any administration anticipated to be undertaken by AAI in a role of foreign representative can now be conducted by any trustee appointed in the involuntary case. However, the Respondents ignore the fact that the involuntary petition which they filed under § 303 of the Bankruptcy Code is in a preliminary status, not dissimilar to AAI's request for injunctive relief under § 304(b). We have pending allegations in the § 303 petition which have been contested by Fracmaster representatives as well as by AAI. There has been to date no adjudication of those allegations and that § 303 adjudication process is being strictly governed, as it should be, by the Federal Rules of Bankruptcy Procedure. Not only is there a possibility that the § 303 petition will not be granted on its own merits, there is also a pending motion for abstention under § 305 of the Bankruptcy Code under which the involuntary case could be suspended or dismissed, notwithstanding the validity of the pending allegations. Therefore, since there is no current guarantee that there will actually be a bankruptcy administration arising from the filing of the involuntary petition, the requests for relief currently sought by AAI under the provisions of § 304(b) have not been rendered moot.

### IV. *CONCLUSION.*

Therefore, the § 304 petition filed by AAI is hereby granted and the "Motion to Dismiss Pursuant to Bankruptcy Rule 1011(b)" filed by the Respondents on July 14, 1999 is hereby denied. Appropriate orders will be entered which are consistent with this opinion.