In re Petition of Len B. **BLACKWELL** for the **ESTATE OF I.G. SERVICES LTD.**, Debtor in Foreign Proceeding, Debtor.

**Len B. Blackwell, As Joint Official Liquidator of I.G. Services, Ltd., Joint Liquidator of Inverworld, Ltd., and Co-trustee of IWG Services, Ltd., Plaintiffs,**

v.

**Rio Management, Inc., Addison Enterprises, Inc., Palladiem, Ltd., Persimmon Hills, Inc., Jose P. Zollino and Rosa Del Carmen Fernandez de Zollino, Defendants.**

Bankruptcy No. 99–53169–C.
Adversary No. 00–5216–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 21, 2001.

---

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS BLACKWELL'S FIRST AMENDED COMPLAINT**

LEIF M. CLARK, Bankruptcy Judge.

Defendants seek to dismiss the first amended complaint of Plaintiffs. For the reasons set out in this memorandum decision, that motion will be granted.

Plaintiff Len B. Blackwell ("Blackwell"), acting as liquidator of InverWorld, Ltd. ("Ltd.") seeks to collect $1,020,000, plus interest and attorneys' fees, from Rio Management, Inc. ("Rio Management") on a promissory note Rio Management executed in favor of Ltd. (the "Rio Promissory Note"). Ltd. also seeks, via its liquidator Blackwell, to collect $1,300,000, plus interest and attorneys' fees, from Defendant Jose Zollino ("Zollino") on a promissory note Zollino executed payable to Ltd. (the "Zollino Promissory Note"). Both the Rio Promissory Note and the Zollino Promissory Note were executed on August 20, 1997.

Blackwell, acting in his capacity as liquidator of I.G. Services, Ltd. ("IGS"), seeks a declaratory judgment (pursuant to Rule 57[1] of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201) that IGS is the rightful owner of 74.39% of the validly issued and outstanding shares of Ltd. These shares of Ltd., Blackwell contends, were pledged by Targi Development, Inc. ("Targi") and CYF Ltd. ("CYF") to secure certain notes (which are now in default) payable to IGS. In the alternative, Blackwell claims that IGS is the owner outright of all the validly issued and outstanding shares of the Rio Management stock, and that Rio Management, in turn, owns the majority of Ltd.'s stock.

Blackwell further maintains that Rio Management, and not Addison Enterprises, Inc. ("Addison Enterprises") or Palladiem, Ltd. ("Palladiem"), is the rightful owner of all the issued and outstanding shares of Persimmon Hills, Inc. ("Persimmon Hills"),[2] and asks for a declaratory judgment to that effect. In the event that the court does not award this declaratory relief, Blackwell seeks relief pursuant to Sections 541, 542, 544 and 550 of the Bankruptcy Code (and applicable state fraudulent transfer laws) to set aside any alleged transfer of the Persimmon Hills stock from Rio Management to Addison Enterprises and/or Palladiem as fraudulent and void as to Ltd. and as to IGS's unsecured creditors,[3] and to require Addison Enterprises and/or Palladiem either to turn over any

---

1. Rule 57 of the Federal Rules of Civil Procedure is in applicable to bankruptcy cases. Rule 7057, of the Federal Rules of Bankruptcy Procedure, states:

 There is no Bankruptcy Rule 7057. Federal Rule 57 relating to declaratory judgments is not applicable in bankruptcy cases. Apparently, it was believed to be unnecessary. Declaratory judgment actions are, nonetheless, adversary proceedings under Bankruptcy Rule 7001.

 Rule 7001 states: "The following are adversary proceedings: ... (9) a proceeding to obtain a declaratory judgment relating to any

of the foregoing." Thus, Rule 7001 does permit the court to make declaratory judgments pursuant to 28 U.S.C. § 2201. *See In re Allied Artists Pictures Corp.*, 71 B.R. 445, 448 (S.D.N.Y.1987).

2. The question who owns the stock of Persimmon Hills is important because Persimmon Hills owns several pieces of real property approximately worth $4,000,000.

3. The transfer of the Persimmon Hills stock, if it occurred, is allegedly fraudulent as to Ltd. because Ltd. is supposedly a creditor of Rio

shares of the Persimmon Hills stock to Rio Management or to pay Rio Management the value of such shares so that Rio Management will have assets available to satisfy any judgment Ltd. may obtain against Rio Management on the Rio Promissory Note.

Finally, Blackwell has applied for preliminary and permanent injunctions prohibiting Defendants or anyone in active concert or participation with any of the Defendants from transferring the shares of the Persimmon Hills stock during the pendency of this suit.

In response, Defendants Persimmon Hills, Jose P. Zollino, and Rosa del Carmen Fernandez de Zollino move to dismiss Blackwell's First Amended Complaint pursuant to Rule 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). *See* FED.R.CIV.P. 12(b)(1), (6); *see also* FED.R.BANKR.P. 7012(b) (incorporating the provisions of Rule 12).[4] This *motion to dismiss is joined by Defendants Palladiem, Addison Enterprises, and Rio Management (collectively, the "Foreign Defendants").* The Foreign Defendants also contend that this court lacks personal jurisdiction over the Foreign Defendants and that Blackwell has failed to sufficiently serve the Foreign Defendants with process. The Foreign Defendants further argue that Blackwell fails to state a claim for fraudulent transfer under 11 U.S.C. § 544, or for turnover under 11 U.S.C. § 542.

---

Management, and Rio Management became insolvent as a result of the transfer of the stock from Rio Management to Addison or Palladiem. The transfer is allegedly fraudulent as to IGS's unsecured creditors because IGS allegedly owned all of the outstanding shares of Rio Management's stock at the time the Persimmon Hills stock was transferred. While we question IGS's standing to bring a fraudulent conveyance action in this case (*i.e.*, IGS is not a *creditor* of Rio Management), *see infra* note 12, our ultimate determination today does not require that we resolve this issue.

## ANALYSIS

### 1. Do we have subject matter jurisdiction over Blackwell's claims?

■ Our first task is to determine whether we have subject matter jurisdiction over Blackwell's claims. *Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 584 (5th Cir.1999) (courts must be assured of their subject matter jurisdiction at all times). A bankruptcy court's jurisdiction "is wholly 'grounded in and limited by statute.'" *In re Bass*, 171 F.3d 1016, 1022 (5th Cir.1999) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)). Specifically, 28 U.S.C. § 1334(b) grants district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," and 28 U.S.C. § 157(a) permits the district courts to refer any such proceedings to the bankruptcy courts.

■ Generally, to determine whether a bankruptcy court can exercise jurisdiction over a matter, "it is necessary only to determine whether [the] matter is at least 'related to' the bankruptcy." *Id.* (quoting *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir.1995) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987))).[5] Some courts go one step further and say that the "related to" formulation is sufficient to test *all* bankruptcy jurisdiction questions, on the theory that,

---

4. The Defendants also argue that Ms. Zollino and Persimmon Hills should be dismissed from this lawsuit because Blackwell does not plead an underlying cause of action upon which to base a request for injunctive relief against Ms. Zollino or Persimmon Hills. Blackwell has agreed to dismiss Ms. Zollino as a party, but a dispute still remains as to whether Persimmon Hills should also be dismissed.

5. The term "related to," as used in the bankruptcy jurisdiction context, is a term of art. *Id.* The Fifth Circuit elaborated as follows:

if a matter is at least "related to" the case, that should be the end of inquiry because the "arising in" and "arising under" categories of bankruptcy jurisdiction are necessarily subsumed in the concept of "related to." That might not always be the case however. For example, a malpractice action against professionals retained in a bankruptcy case might fall within the "arising in" jurisdiction of the court, even though case administration has long since ceased (and case administration is the hook from which dangles "related to" jurisdiction). Similarly, an action to test the nondischargeability of a debt under section 523 almost by definition falls outside the administration of the case, because it can have no conceivable affect on either the administration of claims or the distribution of estate assets. Yet it clearly "arises under" a provision of the Bankruptcy Code, bringing it within the bankruptcy jurisdiction of the federal courts. Thus, a negative answer to the test for "related to" jurisdiction does not necessarily conclude the court's inquiry into its subject matter jurisdiction. It must still test to see whether the action either "arises in" the bankruptcy case or "arises under" a section of the Bankruptcy Code. *See In re Simmons*, 205 B.R. 834, 840 (Bankr. W.D.Tex.1997) (holding that "arising in" jurisdiction is a separate reservoir of federal bankruptcy jurisdiction that may overlap with but is not coextensive with "related to" jurisdiction).

### a. Do we have subject matter jurisdiction over the InverWorld Ltd. claims?

Many of the claims brought in this case are brought by Blackwell on behalf of InverWorld, Ltd. ("Ltd.").[6] Ltd. seeks the following: (1) recovery on the Rio Promissory Note; (2) recovery on the Zollino Promissory Note; (3) declaratory judgment that Rio Management, and not Addison Enterprises, Palladiem or any other party, is the rightful owner of all the validly issued and outstanding shares of Persimmon Hills; and (4) in the event that we conclude that the Persimmon Hills stock is in the corporate hands of Palladiem and/or Addison Enterprises, Ltd. seeks judgment avoiding and setting aside, as fraudulent to Ltd. (an alleged creditor of Rio Manage-

---

A proceeding is "related to" a bankruptcy if " 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " More specifically, " '[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the handling and administration of the bankruptcy estate.' " This test is obviously conjunctive: For jurisdiction to attach, the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate. *Id.* (quotations omitted).

**6.** Ltd. was formed in 1981 and registered as a Cayman Island company. Until July 1992, Ltd. provided investment management and financial services to investors primarily residing in Mexico and Latin America. Jose Zolli-

no ("Zollino") was a director and de facto chairman of Ltd., and Bricker, an attorney at Curtis Mallet, a New York law firm that has represented not only the various InverWorld companies throughout their existence, but also Zollino and many corporations and trusts set up for his and his family's benefit, as Secretary of Ltd. In the late 1980s, Ltd. became the owner of InverWorld Holdings, Inc., a Delaware holding company that owned InverWorld, Inc. ("Inc.") and InverWorld Securities, Inc. ("ISI"), both of which were also Delaware corporations, registered to do business in Texas, and headquartered in San Antonio, Texas. Inc. was a registered investment advisor and ISI was a registered broker/dealer under U.S. securities laws. In March 1992, Ltd. also became the owner of InverWorld, Ltd. (the "Bank"). Ltd. is currently in voluntary liquidation in the Grand Court of the Cayman Islands, and Blackwell has been appointed as the joint official liquidator of Ltd.

ment by virtue of the Rio Promissory Note), any transfers of the stock ·of Persimmon Hills to Addison Enterprises or Palladiem, and turnover of any share certificates of the Persimmon Hills stock to Rio Management.

In defense of subject matter jurisdiction over the Ltd. claims, Blackwell makes the following argument: "[t]his proceeding will ... be related to the ancillary proceeding Blackwell is preparing to file as Joint Official Liquidator of [ ] Ltd. in light of the recent ruling by the Grand Court of the Cayman Islands ordering the court-supervision òf [ ] Ltd. and recognizing Blackwell as a Joint Official Liquidator of [ ] Ltd." In addition, Blackwell contends that we have subject matter jurisdiction over Ltd.'s claims because any recovery on Ltd.'s claims will eventually benefit the estate of IGS (and its creditors).

1. *Do we have subject matter jurisdiction over Ltd.'s claim because a § 304 proceeding will be commenced in the near future?*

 The sole jurisdictional door to this court is 28 U.S.C. § 1334(b). One way for

Blackwell to get a foot through the § 1334(b) door is to file a § 304 ancillary proceeding in aid of Ltd.'s liquidation proceeding in the Cayman Islands. "The plain terms of 28 U.S.C. § 1334(a) and 11 U.S.C. § 304 suggest that, by definition, the bankruptcy court has jurisdiction over any 'cause' *arising under* § 304 of title 11." Tina L. Brozman & Denise R. Polivy, *Concurrent, Same Entity, Cross-border Insolvency Proceedings,* in 22nd Annual Current Developments in Bankruptcy & Reorganization 2000, at 857 (Practising Law Institute Commercial Law and Practice Course Handbook Series, PLI Order No. A0–004D, 2000) (emphasis added). In addition, 11 U.S.C. § 101(42) provides that a " 'petition' means petition filed under section 301, 302, 303 or *304* of this title, as the case may be, *commencing* a case *under* this title." *Id.* (emphasis added). Thus, matters brought under the umbrella of a § 304 proceeding would fall under this court's § 1334(b) "arising under" jurisdiction.[7]

In this case, however, Blackwell has not yet filed a § 304 petition on behalf of Ltd. *Intent* to file a § 304 petition does not, of

---

**7.** Defendants maintain that even if Blackwell did file a § 304 petition on behalf of Ltd., this court would still not have subject matter jurisdiction over Ltd.'s claims. Defendants' argument first points to the language of the *In re Bass* court. In *Bass,* the Fifth Circuit stated that in order to determine whether a bankruptcy court may exercise jurisdiction over a claim or a cause of action, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Bass,* 171 F.3d at 1022. The *Bass* court set forth a two-pronged test for "related to" jurisdiction, namely (1) whether the outcome of the action will alter the rights, obligations, and choices of action of the debtor, and (2) whether the action will have an effect on the administration of the estate. *Id.* Taking the *Bass* language, the Defendants then move to the Fifth Circuit's decision in *In re Schimmelpenninck.* In *Schimmelpenninck,* the Fifth Circuit stated that a § 304 proceeding does not create a

"bankruptcy estate." *In re Schimmelpenninck,* 183 F.3d 347, 361 (5th Cir.1999). Thus, Defendants conclude, even if Blackwell did file a § 304 petition, the court would not have jurisdiction over any matter brought under the § 304 proceeding because there is no bankruptcy estate upon which the outcome of this lawsuit will have an effect.

Defendants' argument fails because it relies solely on this court's "related to" jurisdiction. As discussed above, we must test our jurisdiction under all three jurisdictional reservoirs contained in 28 U.S.C. § 1334(b). *See supra* pp. 735–36. Matters brought pursuant to a § 304 petition, come within this court's "arising under" jurisdiction. *See* 11 U.S.C. § 101(42). If we were to adopt Defendants' logic, we would exterminate § 304 from the Bankruptcy Code because a bankruptcy court would never have jurisdiction over any matter brought under § 304.

course, commence a case under Title 11. The court cannot exercise its "arising under" jurisdiction unless a § 304 petition has been filed on behalf of Ltd. Until then, the § 1334(b) jurisdiction door remains closed.[8]

Blackwell argues in the alternative that Ltd. has commenced a § 304 proceeding in this case because Blackwell's amended complaint (which alleges jurisdiction over Ltd.'s claims under § 304) constitutes a § 304 petition on behalf of Ltd. Blackwell's response to Defendants' motion to dismiss even sets forth the standards for accepting a § 304 petition, and explains that this court has very little discretion to deny such a petition. We are not persuaded by Blackwell's argument. A foreign estate cannot commence a § 304 proceeding by asserting a claim in another foreign debtor's adversary proceeding (in this case, IGS's). Furthermore, a § 304 ancillary proceeding is not commenced by simply asserting in a *complaint* that a court has subject matter jurisdiction under § 304. To properly commence a § 304 proceeding, the foreign representative of the estate must file a "petition" under § 304 with the bankruptcy court. 11 U.S.C. § 304(a); *see also In re Fracmaster, Ltd.*, 237 B.R. 627, 632 (Bankr.E.D.Tex.1999). A "petition" is defined as a "petition filed under section 301, 302, 303, or 304 of [Title 11], as the case may be, *commencing a case* under this title." 11 U.S.C. § 101(42) (emphasis added). If we were to conclude that a *complaint* properly "commenced a case"

under title 11, a party could simply file a complaint against another party in a bankruptcy court without either party first filing a petition for bankruptcy relief—making a shambles of jurisdiction analysis. A complaint alleging jurisdiction under § 304 is not a substitute for an actual § 304 petition.

2. *Do we have subject matter jurisdiction over Ltd.'s claims because any recovery by Ltd. on its claims will benefit the estate of IGS and its creditors.*

■ Blackwell has a back-up argument. He argues that we have subject matter jurisdiction over Ltd.'s claims because any recovery by Ltd. on its claims will ultimately benefit the estate of IGS and IGS's creditors (and, thus, we get around Ltd.'s subject matter jurisdiction problem because IGS *does* have § 304 proceeding pending in this court). The theory underlying this argument is that Ltd. is controlled by IGS, who owns approximately 75% of Ltd.'s shares, or that Ltd. is owned by Rio Management and Rio Management is owned by IGS (both of these "ownership" issues are still in dispute). Thus, when Ltd. recovers on the Rio and Zollino Promissory Notes, the benefit will ultimately flow to IGS and its creditors.

■ Assuming that IGS does exercise control over Ltd., whether directly or through Rio Management, we are not convinced that such control confers subject matter jurisdiction on this court over

---

**8.** Once a § 304 ancillary proceeding has been commenced, we have jurisdiction to "order turnover of the property of [the foreign debtor's] estate, or the proceeds of such property, to such foreign representative" or to "order other appropriate relief." 11 U.S.C. § 304(b)(2)–(3). As the Fifth Circuit recently observed, "[s]ubsection (b) is intended to arm the courts with maximum flexibility in light of principles of international comity and respect for the laws of foreign nations. One court

has referred to section 304's grant of judicial authority as tantamount to the power to mold relief 'in near blank check fashion.'" *Schimmelpenninck*, 183 F.3d at 361 (quotations omitted). A court's decision to enter an order pursuant to § 304(b)(2) or (3) is guided by the six factors listed under § 304(c). *Id.* at 363–64; *see also In re I.G. Services Ltd.*, 244 B.R. 377, 390 (Bankr.W.D.Tex.2000). If one of the six factors does not apply, then our "blank check" powers evaporate.

Ltd.'s claims. Blackwell's argument is a colorful attempt to squeeze Ltd.'s claims into this court's "related to" jurisdiction by asserting that the adjudication on Ltd.'s claims will have a conceivable effect on IGS and IGS's creditors. *See e.g., Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987) (a proceeding comes within a bankruptcy court's "related to" jurisdiction if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy). Even though IGS has filed a § 304 proceeding, a § 304 proceeding does not create an estate under Title 11. *See supra* note 9. The actual estate is in the Cayman Islands, not the United States. Thus, we do not have subject matter jurisdiction over Ltd.'s claims merely because any recovery by Ltd. on its claims may potentially benefit the estate of IGS and its creditors.[9]

**b. Do we have subject matter jurisdiction over IGS's claims?**

■ The remaining requests for relief in this case are brought by Blackwell on behalf of IGS. The requests are as follows: (1) declaratory judgment that IGS is the

rightful owner of 74.39% of the validly issued and outstanding shares of Ltd. pursuant to the Pledge Agreements securing the Targi and CYF Notes that are in default, or in the alternative that IGS is the rightful owner of all the validly issued and outstanding shares of Rio Management pursuant to the December 31, 1996 "Share Transfer"; (2) declaratory judgment that Rio Management, and not Addison Enterprises, Palladiem or any other party, is the rightful owner of all of·the validly issued and outstanding shares of Persimmon Hills (and that Rio Management owns the majority of the stock of Ltd.); and (3) in the event that we conclude that the Persimmon Hills stock is in the corporate hands of Palladiem and/or Addison Enterprises, Blackwell seeks judgment avoiding and setting aside, as fraudulent to the unsecured creditors of IGS, any transfer of the Persimmon Hills stock to Addison Enterprises and/or to Palladiem, and turnover of any share certificates of Persimmon Hills to Rio Management.

■ Unlike Ltd., IGS has filed a § 304 ancillary proceeding in this case.[10] Al-

---

9. Even if there were an estate in this case, the outcome of the present litigation would not have a "conceivable effect" on IGS's "estate." In this case, the end product of Ltd.'s lawsuit will benefit Ltd. (not IGS) because the assets of a debtor-corporation's affiliate are not the assets of the debtor-corporation. *See In re Beck Industries, Inc.,* 479 F.2d 410, 415 (2d Cir.1973). In order to recover the assets of its subsidiary, the debtor must assert a claim against the subsidiary to share the assets. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984), overruled on other grounds by, *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995); *see also In re Fitzgeralds Gaming Corp.,* 261 B.R. 1, 2 (Bankr.W.D.Mo.2001) (litigation between debtor's subsidiary and a third party was mere precursor to *future claim* by debtor to share of funds recovered by subsidiary in event that subsidiary prevailed, and could not itself impact upon debtor's rights, liabilities,

options, or freedom of action). In this case, IGS has not asserted a claim against Ltd. (nor will it until Ltd. has money to satisfy that claim). Thus, the outcome of Ltd.'s litigation will not have a "conceivable effect" upon IGS's "estate."

10. Blackwell also argues that this court has jurisdiction over IGS's claims because an involuntary chapter 7 petition has been filed against IGS in this court, and because the protocol confers subject matter jurisdiction on this court. We reject both jurisdictional arguments. As to the chapter 7 petition, the instant adversary proceeding (adversary no. 00–5216) is brought under case number 99–53169, and case number 99–53169 has been brought under IGS's § 304 proceeding, not under IGS's involuntary chapter 7 proceeding (case no. 99–53170). Thus, this court's jurisdiction over IGS's claims in this adversary proceeding arises under § 304 (by virtue of 28 U.S.C. § 1334(b)), not chapter 7. As to the

though a matter brought pursuant to a § 304 proceeding comes within our "arising under" jurisdiction, we cannot exercise subject matter jurisdiction over the matter until it is fully ripe for adjudication. *See Valley v. Rapides Parish School Bd.*, 145 F.3d 329, 331 (5th Cir.1998) ("Ripeness concerns subject matter jurisdiction") (citing *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir. 1995); *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535 n. 8 (3d Cir. 1988), *vacated on other grounds, Valley v. Rapides Parish School Bd.*, 173 F.3d 944 (5th Cir.1999)). The "basic rationale" behind the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements," when those "disagreements" are premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 72, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (quoting *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580–581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1986)).

■■■ IGS's three claims for relief are not ripe for adjudication.[11] IGS's first claim for relief, seeking declaratory judgment that IGS either directly or indirectly controls Ltd., is ultimately an attempt to get to the money Ltd. may or may not recover under the Rio Promissory Note and the Zollino Promissory Note; that is, IGS wants control of Ltd. because Ltd. may soon have money flowing into its corporate coffers. As concluded above, however, this court does not have subject matter jurisdiction over Ltd.'s claims. Until it is established that Ltd. can recover on the two promissory notes (and we first have to have subject matter jurisdiction to do that), it is premature for this court to address the issue of who controls Ltd. (*i.e.*, who will ultimately benefit from Ltd.'s recoveries). Thus, IGS's first claim for relief is dismissed for lack of ripeness.

Likewise, IGS's second and third claims for relief (both of which attempt to get the Persimmon Hills stock into Rio's hands) seek to infuse equity back into Rio Management so that Rio Management will have sufficient funds to satisfy any judgment Ltd. may obtain against Rio Management. *See* Plaintiffs' FAC, ¶ 85 (in the event that Rio Management is not adjudged the owner of the Persimmon Hills stock, "... Plaintiffs are entitled to an order requiring Addison Enterprises and Palladiem to turn over such share certificates to Rio Management, as such shares are property of Rio Management, whose shares are property of the IGS estate *and whose assets are liable for the satisfaction of the unpaid Rio Promissory Note*.").[12]

protocol, a bankruptcy court's jurisdiction is wholly dependent upon 28 U.S.C. § 1334, *see Bass*, 171 F.3d at 1021, not a protocol.

11. A declaratory judgment is a discretionary remedy that courts should be reluctant to apply unless a controversy is ripe. *See Association of Am. Med. Colls. v. United States*, 217 F.3d 770, 779 (9th Cir.2000). Courts generally analyze the issue whether a request for declaratory judgment is ripe under the following test: whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir.1990) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). The focus of this court's decision is on the "immediacy and reality" prong of the ripeness test.

12. There is also a serious standing question as to IGS's fraudulent transfer claim. Neither IGS nor its "unsecured creditors" are creditors of Rio Management. Instead, IGS asserts that it owns all of the Rio Management stock. On the issue of whether mere ownership of stock confers standing on a party to object to a fraudulent transfer, one commentator observed:

As a general rule, corporate forms are observed in bankruptcy unless there are clear

Again, we do not know whether or if Ltd. will obtain a judgment against Rio. Until that time, IGS's second and third claims for relief are not ripe and must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

Ltd.'s claims must be dismissed because Ltd. has not filed a § 304 ancillary proceeding in this court. IGS's claim must be dismissed for lack of subject matter jurisdiction because the claims are not ripe for adjudication. Therefore, Defendants' motion to dismiss Plaintiffs' First Amended Complaint is granted.

So **ORDERED**.

state law grounds for piercing the corporate veil. *See In re KZK Livestock, Inc.*, 221 B.R. 471 (Bankr.C.D.Ill.1998); *see also In re Altman*, 230 B.R. 6 (Bankr.D.Conn.1999). Consequently, courts have held that a preferential or fraudulent transfer of a corporation's assets may not be recovered for the benefit of a sole shareholder or the shareholder's estate, *In re Cassis*, 220 B.R. 979 (Bankr.N.D.Iowa 1998); *In re Spring Grove Livestock Exch., Inc.*, 205 B.R. 149 (Bankr. D.Minn.1997), and a transfer of a subsidiary's assets may not be recovered for the benefit of the parent corporation or of the parent's estate. *In re Regency Holdings (Cayman), Inc.*, 216 B.R. 371 (Bankr. S.D.N.Y.1998). Conversely, transfers of a parent's assets generally may not be recovered for the benefit of a subsidiary's creditors. *Lippe v. Bairnco Corp.*, 230 B.R. 906 (S.D.N.Y.1999). The property rights of the shareholder or the parent are the rights represented by the stock; the specific assets are the property of the corporation or the subsidiary. *Cassis*, 220 B.R. at 979. If prepetition transfers of a corporation's assets may be recovered for the benefit of anyone, it is for the creditors of the corporation itself, not the creditors of the equity owner. *Regency Holdings*, 216 B.R. at 371. It follows that the representative of the bankruptcy estate of a shareholder or parent has no standing to seek to avoid prepetition transfers of the property of the corporation or the subsidiary. *Spring Grove Livestock Exch.*, 205 B.R. at 149.

David B. Young, *Preferences and Fraudulent Transfers*, in 22nd Annual Current Developments in Bankruptcy & Reorganization 2000, at 597 (Practising Law Institute Commercial Law and Practice Course Handbook Series, PLI Order No. A0–004D, 2000). In this case, IGS has only asserted a veil piercing claim as between Addison Enterprises and Palladiem, not between IGS and Rio Management. Therefore, for the reasons given in the Young article, we question IGS's standing to assert a claim for the allegedly fraudulent transfer of the Persimmon Hills stock.